UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. |
| | ) | |
| v. | ) | VIOLATIONS: |
| | ) | |
| | ) | 18 U.S.C. § 1349 (Conspiracy) |
| | ) | |
| SANDRA WALDEN, | ) | 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § |
| | ) | 2461(c), 21 U.S.C. § 853(p) (Forfeiture) |
| Defendant. | ) | |

## INFORMATION

The United States of America hereby charges that:

### Background

At all times relevant to this Information, unless otherwise stated:

1.  The Department of Veterans Affairs ("VA"), an agency of the United States, provided educational assistance to eligible veterans of the United States Armed Forces in the form of tuition, housing costs, and other education-related costs and fees under the Post 9/11 GI Bill. In addition to traditional degree programs, the VA provided educational assistance to veterans pursuing "non-college degree" ("NCD") programs at "non-institutes of higher learning" ("non-IHL"). The VA was headquartered at 810 Vermont Avenue NW, Washington, D.C.

2.  The Post-9/11 GI Bill was one of the VA's education assistance programs for veterans. Under the Post-9/11 GI Bill, the VA paid tuition and associated fees directly to educational institutions, and housing allowances and other education-related costs directly to eligible veterans.

3.  Golden Razor Academy of Cosmetology ("GRAC") was a beauty school located at 7209 Turner Lake Road NW Covington, GA 30014. GRAC was a VA-recognized non-IHL that offered NCD programs in, among others, cosmetology, cosmetology instructor, refresher, esthetics, hair design, nail, and massage.

4.  SANDRA **WALDEN** ("**WALDEN**") was a citizen of the United States and resident of Georgia. **WALDEN** was an owner of GRAC.

5.  Candace Price ("PRICE") was a citizen of the United States and resident of Georgia. PRICE was an owner of GRAC and a School Certifying Official.

6.  CC-1 was a citizen of the United States and resident of Georgia.

**COUNT ONE**
Conspiracy to Commit Wire Fraud
(18 U.S.C. § 1349)

7.  From in or around November 2015 and continuing through in or around May 2021, the defendant, **SANDRA WALDEN**, did knowingly conspire and agree with PRICE, CC-1, and others, known and unknown, to commit wire fraud, that is, to devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and cause to be transmitted certain wire communications in interstate and foreign commerce for the purposes of executing the scheme, in violation of Title 18, United States Code, Section 1343.

Purpose of the Conspiracy

8.  The purpose of the conspiracy was for **WALDEN** and her co-conspirators to unlawfully enrich themselves by submitting materially false and fraudulent information to the VA regarding the education services provided to beneficiaries of the Post-9/11 GI Bill at GRAC.

Manner and Means of the Conspiracy

9.  To further the conspiracy, and accomplish its unlawful object, **WALDEN,** PRICE, CC-1, and others, known and unknown, used the following manner and means, among others:

10. **WALDEN,** PRICE, and CC-1 conspired and engaged in a scheme to defraud the VA, as principals and aiders and abettors, by supplying the VA with false information, including, but not

limited to, false information indicating that veterans eligible for Post-9/11 GI Bill benefits were enrolled in specific GRAC courses of study, despite knowing in truth and in fact that the veterans did not attend GRAC classes. As a result of these false and fraudulent misrepresentations, the VA paid approximately $1,924,172 in Post-9/11 GI Bill tuition benefits to GRAC, and approximately $1,552,120 in Post-9/11 GI Bill education-related benefits directly to veterans who purportedly attended GRAC.

11. **WALDEN,** PRICE, and CC-1, working together and pursuant to an agreement among them, recruited dozens of veterans eligible to receive Post-9/11 GI Bill Benefits to attend GRAC. **WALDEN,** PRICE, and CC-1 falsely told veterans that they would not have to attend class in order to receive benefits paid for by the VA. The veterans were often knowing participants in the scheme and willingly participated with the understanding that they would personally receive Post-9/11 GI Bill Benefits to which they were not entitled.

12. **WALDEN** and PRICE personally directed thousands of dollars in "recruiting fees" to CC-1 in return for CC-1's recruitment of veterans to attend GRAC, despite knowing of a statutory prohibition on such recruitment payments.

13. **WALDEN** and PRICE personally directed additional payments to CC-1, believing that CC-1 was paying approximately two VA officials on their behalf to expedite the VA's payments to GRAC. For example, or about February 21, 2021, CC-1 told PRICE via text message that the VA official wanted more money because he or she had "rushed" a VA payment to GRAC.

14. **WALDEN** and PRICE received notification from CC-1 when the VA had made certain payments to GRAC. For example, on or about November 7, 2019, referring to a VA payment, CC-1 sent a text message to PRICE that read, "[m]y aunt said check it today. Something should've came [sic]. If not let me know."

15. As GRAC's School Certifying Official, PRICE, with WALDEN's knowledge and approval, personally prepared, certified, and submitted to the VA false enrollment forms for veteran students, known as VA Form 22-1999s. The forms that PRICE prepared contained, among other falsities, false addresses for veteran enrollees that made it appear as if the veterans lived near GRAC and were attending classes. For example, PRICE would enter a Georgia address for a veteran despite knowing that the veteran lived hundreds of miles away, in another state. PRICE created these false documents for the purpose of deceiving the VA, and with the understanding that the VA relied on the false information in authorizing payments to GRAC for the veteran enrollees, and in paying other education-related benefits directly to the veteran enrollees.

16. PRICE, with WALDEN's knowledge and approval, personally submitted false VA Form 22-1999 enrollment forms via the VA Online Certification of Enrollment ("VA-ONCE") computer system, which resulted in interstate wire communications from Georgia to locations outside Georgia. These forms were eventually submitted to the VA in Washington, D.C. PRICE personally submitted approximately 266 VA Form 22-1999s for approximately 72 veteran enrollees.

17. During one recruiting pitch, **WALDEN** told Individual 1, whom **WALDEN** believed to be a veteran interested in enrolling GRAC: "this is personal, this is between me and you, and it's very secretive, do you intend to do hair or what do you intend to do?" **WALDEN** stated that other veteran students "can't come to school full-time" and that **WALDEN** "let them come as they need and as they can." **WALDEN** also asked to enroll Individual 1's spouse, stating, "I can run your [spouse] through here and let [him/her] use [his/her] money too" despite Individual 1's indication that his or her spouse had no interest in enrolling in GRAC. To induce Individual 1 to provide his

4

or her spouse's information, **WALDEN** stated that the spouse "wouldn't have to come to school, maybe every once in a while come in, clock in."

18.   **WALDEN** further stated to Individual 1, "VA is going to pay me, and they're going to pay you too…you'll be listed on paper as a full-time student." **WALDEN** would "set no minimum" in terms of required hours of attendance as long as Individual 1 kept the "paperwork up to date."

19.   **WALDEN** and **PRICE** personally directed veteran enrollees to sign attendance forms and credit hour forms that falsely indicated that the veterans had attended classes. **WALDEN** told Individual 1, for example, "even on the days you don't come, you would have to fill these out…this is very confidential." **WALDEN** and **PRICE** also told Individual 1 that Individual 1 would not need to visit the school every day to complete the attendance and credit hour forms, and that Individual 1 could complete all attendance forms before the course started. **WALDEN** and **PRICE** encouraged Individual 1 to complete attendance forms for Individual 1's spouse as well.

20.   **WALDEN** and **PRICE** told veterans that the VA would not catch on to the scheme to induce them to enroll in GRAC. For example, when Individual-1 expressed concern about getting in trouble, **WALDEN** stated, "It don't work that way…They don't have time to get on the phone and call people," and **PRICE** stated, "They don't call y'all. And they really don't call me either."

21.   **WALDEN** and **PRICE** maintained these false documents in student files at GRAC to deceive the VA in the event of an audit. **WALDEN** and **PRICE** told Individual 1 and other veterans that they might need to complete paperwork after the fact in the event of an audit.

22.   **WALDEN** and **PRICE** acted knowingly, willfully, and with the intent to defraud the VA.

23.   **WALDEN** and **PRICE** personally benefited from the money that the VA paid to GRAC.

24.   Between in or around November 2015 and in or around May 2021, GRAC received approximately $1,924,172 in Post-9/11 GI Bill tuition payments for approximately 63 veteran

5

enrollees. These payments were a reasonably foreseeable loss to the VA attributable to **WALDEN** and PRICE as a result of their roles in the conspiracy and scheme to defraud set forth above.

25. Between in or around November 2015 and in or around May 2021, veterans enrolled in GRAC's courses received approximately $1,552,120 in Post-9/11 GI Bill education-related benefits. These payments were a reasonably foreseeable loss to the VA attributable to **WALDEN** and PRICE as a result of their roles in the conspiracy and scheme to defraud set forth above.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

26. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of conspiracy to commit an offense against the United States, that is, conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, as alleged in this Information, defendant shall forfeit to the United States of America all property, real and personal, which constitutes and is derived from proceeds traceable to the conspiracy. The property to be forfeited includes, but is not limited to, a money judgment in the amount of approximately $3,476,292.00, which amount includes approximately $318,580.00 seized from defendant on or about May 28, 2021.

27. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

        Respectfully submitted,

        JOSEPH S. BEEMSTERBOER
        Acting Chief, Fraud Section
        Criminal Division
        United States Department of Justice

By:   */s/Michael P. McCarthy*
        _____
        Michael P. McCarthy, D.C. Bar #1020231
        Trial Attorney, Criminal Division, Fraud Section
        United States Department of Justice
        1400 New York Avenue, N.W.
        Bond Building, Fourth Floor
        Washington, D.C. 20530
        (202) 305-3995
        Michael.McCarthy2@usdoj.gov