UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No.: 21-cr-00521 |
| | ) |
| SANDRA WALDEN, | ) |
| | ) |
| Defendant. | ) |

GOVERNMENT'S CONSOLIDATED
MEMORANDUM IN AID OF SENTENCING
AND MOTION FOR DOWNWARD DEPARTURE

The United States, by and through its undersigned counsel, respectfully submits this consolidated memorandum in aid of sentencing and motion for downward departure to aid the Court in fashioning appropriate sentences for defendants Candice Price and Sandra Walden, who are set to be sentenced on July 1, 2022.

**Summary of Government's Recommendation as to Price**

On November 16, 2021, Price pled guilty to a one-count information charging a conspiracy to commit wire fraud in violation of 18 USC § 1349. In her PSR, Probation calculated for Price a total offense level of 24, criminal history category I, resulting in a guideline range of 51 to 63 months. In her plea agreement with the government, the parties agreed to a total offense level of 20, criminal history category I, resulting in a guideline range of 33 to 41 months. The difference between the calculations is a four-level aggravating role enhancement under USSG §3B1.1(a) applied by Probation. As explained below, the government maintains that this enhancement is not supported by the evidence and recommends that the Court adopt the guideline calculation in the plea agreement. The government is also seeking a downward departure of 40% from the total offense level for Price's substantial assistance to the government pursuant to U.S.S.G. § 5K1.1.

This results in an amended offense level of 12, and an amended guideline range of 10 to 16 months. As explained below, the government recommends a sentence at the low end of this guideline range.

**Summary of Government's Recommendation as to Walden**

On November 16, 2021, Walden pled guilty to a one-count information a conspiracy to commit wire fraud in violation of 18 USC § 1349. Probation calculated for Walden a total offense level of 24, criminal history category I, resulting in a guideline range of 51 to 63 months. In her plea agreement with the government, the parties agreed to a total offense level of 20, resulting in a guideline range of 33 to 41 months. As with Price, the difference between Probation's and the parties' calculations stems from a four-level aggravating role enhancement under USSG §3B1.1(a) applied by Probation. As explained below, the government maintains that this enhancement is not supported by the evidence and recommends the Court adopt the parties' guideline calculation. The government is also seeking a downward departure of 40% from the total offense level for Walden's substantial assistance to the government pursuant to U.S.S.G. § 5K1.1. This results in an amended offense level of 12, and an amended guidelines range of 10 to 16 months. The government recommends a sentence at the low end of this guideline range.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

**Background on the Post-9/11 GI Bill**

The Post-9/11 GI Bill is an education benefits program administered by the Department Veterans' Affairs ("VA") that pays tuition and a housing stipend to allow eligible veterans of the U.S. Armed Forces to attend educational institutions of their choosing. In addition to traditional schools that award college degrees, veterans may use their Post-9/11 GI Bill benefits to attend VA-approved institutions that provide professional training, but do not award traditional college degrees. Under the Post-9/11 GI Bill, the VA makes tuition and fee payments directly to the school

on the enrolled veteran's behalf. It also provides a monthly housing allowance directly to the enrolled veterans.

Institutions gain the VA's approval to receive funds under the Post-9/11 GI Bill by submitting an application and proposed course catalog to the VA, via the State Approving Agency for the state where the institution is located. Institutions must agree to adhere to Post-9/11 GI Bill program rules, and must make ongoing representations to the VA related to student enrollment and compliance with program rules.

**Summary of Defendants' Scheme to Defraud the VA**

Price and Walden started the Golden Razor Academy of Cosmetology ("GRAC") in or around 2008. They gained VA approval to participate in the Post-9/11 GI Bill program in or around 2015. Price and Walden were responsible for supplying the VA with true and accurate information about GRAC and enrolled students. From in or around 2015 until in or around 2021, when its VA approval was withdrawn, GRAC, acting through Price and Walden, utterly failed to comply with Post-9/11 GI Bill program rules. Among other things, GRAC enrolled veteran students but did not require them to come to class. For those few students who did attend class, the instruction that GRAC provided was inconsistent with the instruction that GRAC represented to the VA that it would provide. To deceive the VA and ensure that GRAC continued to receive payments, Price and Walden engaged in a course of fraudulent behavior to create the illusion that veteran enrollees attended class and received legitimate instruction. Defendants provided the VA with false certifications representing that enrolled veterans attended classes and received specific instruction. They created false classroom sign in sheets and tests. To deceive the VA into believing that enrollees were attending classes, they provided the VA with false addresses for enrollees that suggested that the enrollees lived near GRAC, when in fact the enrollees lived hundreds of miles

away. Working with CC-1, who pled guilty before this Court, defendants recruited veterans to enroll in GRAC. They personally directed thousands of dollars in "recruiting fees" to CC-1, despite knowing of a statutory prohibition on such recruitment payments.

## II.     SENTENCING GUIDELINES

### Price

Probation calculated Price's applicable total offense level to be 24, criminal history category I, resulting in a guideline range of 51 to 63 months. In her plea agreement, the parties agreed to a total offense level of 20, criminal history category I, resulting in a guideline range of 33 months to 41 months. Both calculations include a base offense level of 7 and a 16-level enhancement because the total loss from the fraud was between $1.5 million and $3.5 million.

The parties and Probation agree that the defendant is entitled to a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. Price clearly demonstrated acceptance of responsibility for the offense through her allocution and has adhered to every provision of the plea agreement since it was entered. The parties and Probation further agree that the defendant is entitled to an additional one-level reduction for timely assistance under USSG §3E1.1(b). Price assisted authorities by providing timely notice of her intent to plead guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Concluding that the defendant was an organizer or leader of a criminal activity that involved five or more participants, probation applied a four-level enhancement under § 3B1.1(a). As explained below, the government does not believe that a four-level enhancement is supported by the evidence in this case. The government recommends that the Court adopt the total offense

level and guideline range in the plea agreement: a total offense level of 20 and a guideline range of 33 to 41 months.

**Walden**

Probation calculated Walden's applicable total offense level to be 24, criminal history category I, resulting in a guideline range of 51 to 63 months. In her plea agreement, the parties agreed to a total offense level of 20, criminal history category I, resulting in a guideline range of 33 to 41 months. Both calculations include a base offense level of 7 with a 16-level enhancement because the total loss from the fraud was between $1.5 million and $3.5 million.

The parties and Probation agree that the defendant is entitled to a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. This is supported by Walden's acceptance of responsibility through her allocution, her adherence to every provision of the plea agreement, and her conduct between entry of her plea and sentencing. The parties and Probation also agree a one-level reduction for providing timely notice of acceptance of guilt is also appropriate.

As with Price, the government's position is that the four-level enhancement under § 3B1.1(a) proposed by Probation for Walden is not supported by the evidence.

**U.S.S.G. § 3B1.1(a) does not apply**

The aggravating role enhancement under § 3B1.1(a) applies if the defendant is the "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Probation applied the enhancement to its guideline calculation for both defendants, finding that they were organizers or leaders of a criminal activity involving five or more participants. The government understands that Probation found that the veteran students—more than five of which were enrolled at GRAC—were "participants" for the purpose of the sentencing

enhancement. Probation also found that Price and Walden were leaders and organizers in that they, with CC-1, devised and executed the scheme to defraud the VA.

The aggravating role enhancement does not apply because there is no evidence that either defendant organized or exercised control over CC-1 and the veteran students who enrolled in GRAC. While a finding that the defendants organized or exercised control over others is not required to apply the aggravating roll enhancement, they are hallmark factors that courts consider that are not present here. United States v. Graham 162 F.3d 1180, 1185 (D.C. Cir. 1998) (noting that the enhancement is appropriate for defendants who exercise control over others). United States v. Dade, 787 F.3d 1167 (7th Cir. 2015) (a sentencing judge considers multiple factors, including organization, control, and coercion, in making an otherwise "commonplace judgment" about a defendant's relative culpability in a scheme).

### III.    RELEVANT SECTION 3553(a) FACTORS

The Sentencing Guidelines are advisory in nature. United States v. Booker, 543 U.S. 220 (2005). However, they are only one of the statutory factors that sentencing courts must consider when imposing a sentence. See 18 U.S.C. § 3553(a)(4); United States v. Rita, 551 U.S. 338 (2007). They serve as "the starting point and the initial benchmark" in every sentencing proceeding, Gall v. United States, 552 U.S. 38, 49 (2007), and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350. The other factors that 18 U.S.C. § 3553(a) identifies as relevant include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, id.; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to provide restitution to any victims, § 3553(a)(7).

The most relevant of these factors are discussed below. On balance, the factors weigh in favor of a sentence at the low end the defendants' advisory guideline ranges.

A. **Nature and Circumstance of the Offense**

The defendants committed a serious offense against one of the nation's premier benefits programs. Since the first GI Bill that was enacted at the end of World War II, the United States has committed to making higher education accessible to veterans through education benefits. The Post-9/11 GI Bill, enacted following the terror attacks of 9/11, is the latest manifestation of this commitment. Educational assistance is one of the most important benefits the United States confers to its veterans, allowing them to transition to civilian life and obtain the credentials needed to start new careers. Every veteran who has served this country and seeks to use their VA education benefits deserves a high quality, meaningful, and legitimate educational experience.

The defendants abused this system by running a fraudulent moneymaking scheme disguised as a school that (1) denied innocent veterans a legitimate education, and (2) drained an important federal benefits program of vital resources. Over the course of nearly six years, the fraud perpetrated on the VA by Price, Walden, and CC-1 caused a loss of approximately $3,476,292.00. As co-owners of GRAC, Price and Walden personally benefited from the approximately $1,924,172.00 of the loss amount that was paid by the VA directly to GRAC.

The total loss, however, likely overstates the defendants' individual culpability. First, veterans who willingly enrolled in GRAC knowing that it was a fraud magnified the reasonably foreseeable loss as a result of the fraud by wrongfully obtaining housing benefits that did not inure to the benefit of these defendants. In addition, without the involvement of CC-1, the loss as a result of the defendants' actions may have been lower because there would have been fewer veterans

enrolled in GRAC. These aspects of the fraud scheme weigh in favor of a sentence at the low end of the applicable sentencing guidelines.

    B.  **History and Characteristics of the Defendant**

**Price**

Price's personal history and characteristics present both mitigating and aggravating circumstances. Price has no prior convictions but has been arrested three times since 1998. Two of those arrests were related to fraudulent behavior. In 2016, Price was arrested for paying with unlawfully uttered checks and charged with two counts of Deposit Account Fraud. In 2018, Price was arrested for exploiting a disabled adult by exercising unauthorized control over his finances and forging a power of attorney. She was charged with exploitation of a disabled adult, felony theft by deception, and forgery. Although Price was never convicted of these charges, her criminal history, especially in light of her conduct in the instant case, concerns the government.

On the other hand, Price's family obligations are such that a lengthy term of incarceration would negatively affect innocent parties. She is the guardian and caretaker of her two granddaughters. Her granddaughters have been suffering from depression and other serious mental health issues since the death of their grandfather (Price's husband) in September 2021. Price is also partially responsible for caring for her elderly father who appears to be suffering from the early stages of dementia. Price and Walden are Mr. Walden's only caretakers. The government recognizes that prolonged incarceration may have significant adverse consequences for innocent members of Price's family and submits that a sentence at the low end of the applicable sentencing guidelines is appropriate.

**Walden**

Similarly, Walden's personal history and characteristics present mitigating and aggravating circumstances. Walden has no criminal convictions, however, she was arrested and charged with theft by deception and theft by conversion after forging power of attorney documents to access her brother's bank account. These charges point toward a pattern of Walden defrauding others for her own personal enrichment. As with Price, Walden's criminal history is concerning to the government. The government acknowledges that Walden provides care for her elderly husband who is beginning to suffer from dementia. On balance, the government submits that a sentence at the low end of the applicable sentencing guidelines is appropriate.

### C. Deterrence

Based on their respective criminal histories, the government is concerned that Price and Walden may reoffend in the future. Accordingly, the government submits that the need for specific deterrence should factor into the Court's sentence. In addition, general deterrence is an important sentencing factor in any case involving a federal benefits program. The size and scope of the Post-9/11 GI Bill program make fraud difficult to detect and prosecute. As a result, fraudsters all too often get away with defrauding the VA. The Court's sentence should be sufficient to deter other fraudsters from taking advantage of the VA.

### D. Conclusion

The criminal scheme was serious in that it involved defrauding the VA of approximately $3,476,292.00. Price and Walden played a significant role in the scheme, but share responsibility with CC-1, and the total loss to the VA overstates the defendants' culpability. A lengthy period of incarceration would result in significant collateral consequences to innocent third parties, namely Price's granddaughters and Walden's husband. A felony conviction, a short term of incarceration, and forfeiture of fraudulently obtained assets will likely deter Price and Walden from reoffending

and have a general deterrent effect against others who seek to defraud the VA. Accordingly, the government recommends a sentence at the low end of the defendants' respective guideline ranges.

## IV. MOTION FOR DOWNWARD DEPARTURE UNDER SECTION 5K1.1

The United States respectfully moves for a downward departure from the defendants' guideline range pursuant to Section 5K1.1 of the United States Sentencing Guidelines based on the defendant's substantial assistance to the government.

Section 5K1.1 authorizes the Court to depart from the Sentencing Guidelines, upon motion of the government, based on factors, including but not limited to: "(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered; (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant; (3) the nature and extent of the defendant's assistance; [and] (5) the timeliness of the defendant's assistance."

Price and Walden both proffered and provided timely and truthful information that led to the successful investigation and prosecution of CC-1, who pled guilty before this Court on October 26, 2021 (21-cr-559). Holding CC-1 responsible for his central role in the scheme was a goal of the investigation from the outset because CC-1, along with Price and Walden, accounted for all of the loss to the VA. He personally recruited 24 veterans, whose collective enrollment caused a loss to the VA of approximately $1,659,827.58, and was further involved in indirectly recruiting at least 27 additional veterans, causing a further loss of approximately $1,454,518.62. He also enabled Price and Walden by allowing them to use his home address in place of many of the veteran's out-of-state addresses. This allowed GRAC to deceive the VA into believing that veteran enrollees of GRAC lived close to school and regularly attended class. Although their trial

testimony never became necessary, the government also credits the defendants' willingness to testify against CC-1 at trial.

The government submits that defendants each merit a downward departure of 40% from their respective total offense levels. A downward departure of this magnitude results in amended offense levels for each defendant of 12, and amended guideline ranges of 10-14 months. For the reasons stated above, the government recommends a sentence at the low end of this guideline range.

## VI. CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence the defendants to 10 months' incarceration followed by three years of supervised release. The government recommends that the Court order the defendants to pay restitution to the VA in the amount of $3,476,292.00, and further recommends that the Court enter an order of forfeiture for the $318,580 that was already seized from the defendants, and a money judgment for the balance.

    Respectfully submitted,

    LORINDA I. LARYEA
    Acting Chief, Fraud Section
    Criminal Division
    United States Department of Justice

By:    */s/ Michael P. McCarthy*
    Michael P. McCarthy, D.C. Bar #1020231
    Trial Attorney, Fraud Section
    Criminal Division
    United States Department of Justice
    1400 New York Avenue, N.W.
    Washington, D.C. 20530
    (202) 412-1514
    Michael.McCarthy2@usdoj.gov

**CERTIFICATE OF SERVICE**

    I certify that I caused the above Consolidated Memorandum in Aid of Sentencing and Motion for Downward Departure to be served on counsel for the defendant via ECF on June 27, 2022.

                                          /s/ *Michael McCarthy*
                                          Michael P. McCarthy
                                          Trial Attorney
                                          Fraud Section, Criminal Division
                                          U.S. Department of Justice